IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
LATORA BOSTIC,                          *
                                        *
      Plaintiff,                        *
                                        *
      v.                                *      CV 414-083
                                        *
LAURAGINA PROFESSIONAL                  *
TRANSPORT, LLC; JOSEPH L.               *
PORTER, SR.; WE CARE                    *
TRANSPORTATION, LLC; and                *
LOGISTICARE SOLUTIONS, LLC,             *
                                        *
      Defendants.                       *
```

O R D E R

Before the Court are two motions for summary judgment by Defendants We Care Transportation, LLC ("We Care") and LogistiCare Solutions, LLC ("LogistiCare").[1] (Doc. nos. 57 & 59.) Upon due consideration, both motions for summary judgment are hereby **GRANTED**.

I. BACKGROUND

A. Factual Background

We Care provided non-emergency medical transportation services to patients in Georgia. (Doc. no. 57-1, ¶ 2.) We Care's primary office was in Fitzgerald, Georgia, and it expanded to Savannah in early 2013. (Id. ¶¶ 1-2.) We Care received clients

---

[1] Since consenting to removal (Doc. 1-6), the remaining defendants, Lauragina Professional Transport, LLC ("Lauragina") and Joseph Porter, Sr., have not filed an answer or any other motions.

from LogistiCare, a "transportation broker" that referred trip requests to providers. (Doc. nos. 57-1, ¶ 4; 59-2, ¶¶ 3-6.) We Care provided the transportation (doc. no. 57-2, ¶ 4); LogistiCare coordinated the referrals (doc. no. 59-2, ¶ 6). LogistiCare verified that the providers with which it contracted to transport patients complied with Georgia law related to transportation licensing, drug screenings, and criminal background checks. (Doc. no. 59-2, ¶¶ 7-8.) We Care was an independent contractor of LogistiCare. (Id. ¶ 11.)

Latora Bostic left her employment with Lauragina in 2011. (Doc. no. 59-2, ¶ 18.) After her departure, she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged that she had suffered retaliation and sexual harassment while at Lauragina. (Doc. no. 1-1, ¶ 15.)

On January 30, 2013, Henry Harris, We Care's owner, hired Bostic as a probationary employee for 90 days. (Doc. no. 57-1, ¶ 11.) She was responsible for billing and marketing in We Care's Savannah office. (Id. ¶ 15.) Part of her job involved depositing checks the company received. (Id.)

Two days after hiring Bostic, Harris asked her to travel to We Care's office in Fitzgerald, Georgia, to learn about the company's billing practices. (Id. ¶ 17.) After running out of gas on the way to the Fitzgerald office, Bostic arrived two hours late. (Id. ¶ 18.) She stayed at the office for no more than an

2

hour before returning to Savannah. (Id. ¶ 19.) Her stay in Fitzgerald failed to meet Harris's expectations for her visit, and he told her so when she returned. (Id.)

On February 7, 2013, Harris spoke with Lauragina Operations Manager Jimmy Duncan. (Id. ¶ 22.) Duncan told Harris that Bostic had sued Lauragina but did not provide details about the lawsuit. (Id. ¶ 24.) Bostic knew about the conversation Harris had with Duncan. (Id. ¶¶ 27-28.)

On March 11, 2013, Harris and Duncan spoke again about Bostic's lawsuit. (Doc. no. 57-4 at 35.) Bostic overheard Duncan tell Harris "about the sexual harassment charges" during the conversation. (Id.)

On March 12, 2013, Bostic did not come to work, and she was late to work the following day as well. (Doc. no. 57-1, ¶ 31.) Harris spoke with Bostic about both her tardiness and several checks she had failed to deposit. (Id. ¶ 35.) During the conversation, Harris found Bostic to be disrespectful and insubordinate. (Id. ¶ 40; see also Doc. no. 57-3, ¶ 20.) After speaking with her for a few minutes, he fired her. (Doc. no. 57-1, ¶ 41.) After Bostic departed, Harris found billing errors in her work and undeposited checks in her desk. (Id. ¶ 49.)

B. Procedural History

On March 28, 2013, Bostic filed a charge of discrimination with the EEOC, alleging that We Care and LogistiCare had

3

retaliated against her because of her previous EEOC charge against Lauragina. (Doc. no. 59-3 at 41.) She received a right-to-sue letter, dated December 20, 2013, which included both We Care and "Logistic Care." (Id. at 43.) Bostic filed this lawsuit on March 19, 2014 (doc. no. 1-1), and LogistiCare removed it to this Court five days later (doc. no. 1).

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. FED. R. CIV. P. 56(c)(3).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Reese, 527 F.3d at 1268

4

(internal quotation marks omitted) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

The nonmoving party then "'may not rest upon the mere allegations or denials of [its] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial.'" <u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 860 (11th Cir. 2004)(quoting FED. R. CIV. P. 56(e)). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Owen v. I.C. Sys., Inc.</u>, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

The Clerk gave Bostic appropriate notice of Defendants' motions for summary judgment and informed her of the summary judgment rules, including the right to file affidavits or other materials in opposition and the consequences of default. (Doc. nos. 60 & 61.) Thus, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam) are satisfied and the motions are ripe for review.

## III. DISCUSSION

A. **We Care's Motion for Summary Judgment**

Bostic alleges that We Care fired her in retaliation for the EEOC charge she filed against Lauragina. (Doc. no. 1-1, ¶¶ 45-55.)

1. **Bostic has not provided direct evidence of discrimination.**

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). When making a Title VII claim, "the plaintiff bears 'the ultimate burden of proving discriminatory treatment by a preponderance of the evidence.'" Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008) (quoting Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)). She may satisfy this burden "by presenting direct evidence of an intent to discriminate or circumstantial evidence using McDonnell Douglas's burden-shifting framework." Id. at 975 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Direct evidence includes "'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor.'" Akouri v. State of Fla. Dep't of

Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence." Id.

Bostic has presented no direct evidence that her termination was specifically a result of the EEOC charge she filed against Lauragina. She provides her own deposition testimony, but that testimony fails to prove direct evidence of retaliation. In her deposition, she never claims that Harris told her he was firing her because of the EEOC charge. She has failed to point to statements "whose intent could mean nothing other than to discriminate." See Akouri, 408 F.3d at 1347 (quotation omitted). In short, no piece of direct evidence indicates that Harris's motive for terminating Bostic had anything to do with the EEOC charge against Lauragina.

Thus, taken as a whole, Bostic's testimony "suggests, but does not prove, a discriminatory motive." See id. Since her testimony provides a mere suggestion of a discriminatory motive, it is circumstantial evidence.

2. **Bostic has established a prima facie case of retaliation.**

"A plaintiff bears the burden of establishing a *prima facie* case of discrimination in Title VII cases that are supported by circumstantial evidence." Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). When a plaintiff produces only

7

circumstantial evidence, courts use "the burden shifting framework established in McDonnell Douglas." Mealing v. Ga. Dep't of Juvenile Justice, 564 F. App'x 421, 427 (11th Cir. 2014) (citation omitted). Under the McDonnell Douglas framework, a plaintiff must present sufficient circumstantial evidence to establish a prima facie claim of retaliation, see Rives v. Lahood, 2015 WL 1320586, at *3 (11th Cir. Mar. 25, 2015), which requires a plaintiff to establish that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression," Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).

Here, neither party disputes that Bostic has established the first two elements of a prima facie case of retaliation. The Court agrees: she did engage in statutorily protected expression when she filed her EEOC charge against Lauragina, and she also was terminated. See Weeks, 291 F.3d at 1311. The disagreement lies in whether Bostic's termination was causally related to her EEOC charge.

Establishing causality is often the crux of the debate. "In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment

action." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997). For temporal proximity alone to establish the causation prong, such proximity must be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Harris learned that Bostic had "a litigation issue" on February 7, 2013, shortly after he hired her. (Doc. no. 57-2 at 7; see also Doc. nos. 57-1, ¶ 8; 57-4 at 34.) But Harris also learned more details on March 11, 2013. On that date, Duncan told Harris "about the sexual harassment charges" over the phone.[2] (Doc. no. 57-4 at 35.) Two days later, Harris fired Bostic. (Doc. no. 57-1, ¶¶ 31-41.) Taking the facts in the light most favorable to the non-moving party, the Court thus finds Bostic has established causation. This sort of temporal proximity is "very close" and sufficient to meet the burden of causation. Cf. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that three months did not rise to the level of "very close").

The Court finds that Bostic has established this causal relation and, therefore, also a prima facie case of discrimination.

---

[2] We Care's Statement of Undisputed Material Facts (doc. no. 57-1) does not mention this conversation. Upon due examination of the entire record, however, the Court nevertheless makes an inference in the light most favorable to Bostic, the non-moving party. See Matsushita Elec. Indus. Co., 475 U.S. at 587.

### 3. We Care has articulated nondiscriminatory reasons for Bostic's termination.

Once the plaintiff has established a prima facie case, "[t]he burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for the alleged discrimination. If the defendant produces such a reason, the plaintiff must then prove that the legitimate reason offered was a mere pretext for an illegal motive." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 597 (11th Cir. 1994) (quotation marks omitted). "To establish pretext, a plaintiff 'must demonstrate that the proffered reason was not the true reason for the employment decision.'" Mealing, 564 F. App'x at 427 (quoting Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)). "If the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each reason." Id. The plaintiff cannot prove a reason to be pretext "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)(emphasis in original).

Since Bostic has presented a prima facie case of discrimination, the burden shifts to We Care to "articulate some legitimate nondiscriminatory reason for the alleged discrimination." Mulhall, 19 F.3d at 597 (quotation marks omitted). The reasons set forth are Bostic's performance and attendance issues. (Doc. no. 58 at 10.) "[T]he defendant need only produce, not prove, a nondiscriminatory reason." Walker v.

10

NationsBank of Fla. N.A., 53 F.3d 1548, 1556 (11th Cir. 1995). The Court finds that We Care has done just that.

### 4. Bostic has failed to demonstrate that We Care's reasons are pretextual.

Bostic now bears the burden of rebutting We Care's reasons as pretextual. She cannot succeed unless she shows that We Care's reasons are both false *and* that the true reason for Bostic's termination was retaliation. See St. Mary's Honor Ctr., 509 U.S. at 515. She must show that We Care's reasons are mere pretext, which is not the same as showing that We Care's had poor reasons for firing her. "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).

We Care first argues that Bostic was fired due to her poor performance. (Doc. no. 58 at 11.) To support its contention, We Care points to Bostic's failure to deposit checks as expected and her disrespectful attitude toward Harris. (Id.) Bostic admits she failed to deposit checks and argues they were for small amounts, implying her failure to deposit them was unimportant. (Doc. no. 64 at 15.) That the checks were for small amounts is irrelevant. In acknowledging that she failed to accomplish a requirement of her employment (see doc. no. 57-1, ¶ 15), Bostic

11

fails to demonstrate that We Care's proffered reason is mere pretext.

Bostic also fails to rebut We Care's argument that she was disrespectful to Harris. Not only does she admit her disrespect (doc. no. 57-1, ¶ 47), and that she gave him an ultimatum at their last meeting, asking "are you going to fire me or are you going to write me up" (id. ¶ 39), she also misunderstands the nature of the required rebuttal. She argues that Harris misremembered her behavior and that she was calm and collected. (Doc. no. 64 at 15.) But Bostic's perception of her behavior is irrelevant to showing that We Care's reason is pretextual; the relevant inquiry is whether Harris actually believed she was being disrespectful. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). Bostic has presented no evidence to rebut We Care's contention that Harris actually perceived Bostic's behavior as disrespectful. (See Doc. no. 57-1, ¶¶ 40-41.) Thus, Bostic again fails to demonstrate that We Care's reason is mere pretext.

Finally, We Care argues that Bostic was fired due to repeated late attendance. (Doc. no. 58 at 10.) Instead of rebutting We Care's outline of a pattern of late attendance (id.), Bostic responds only to the instance in which she ran out of gas and

12

arrived late at the Fitzgerald office (see doc. no. 64 at 15). Bostic's explanation for her tardiness implicitly admits that she was in fact late while providing no evidence that Harris knew why she was late to that office. Bostic also does not rebut We Care's list of other instances of late attendance. In short, her explanations fall short of providing a rebuttal to We Care's argument that she was fired for poor attendance.

Bostic fails to establish that We Care's given reasons for her termination are false, and she also fails to show that We Care's alleged discrimination was the real reason for her termination. See St. Mary's Honor Ctr., 509 U.S. at 515. Therefore, the Court finds that she has failed to meet her burden of establishing that We Care's reasons are mere pretext. Since We Care's reasons are plausible and unrebutted, the Court finds that Bostic has failed to meet her burden under McDonnell Douglas.

Therefore, the Court grants We Care's Motion for Summary Judgment. (Doc. no. 57.)


**B.   LogistiCare's Motion for Summary Judgment**

"A plaintiff must be an 'employee' to bring a Title VII lawsuit." Cooper v. S. Co., 260 F. Supp. 2d 1258, 1263 n.1 (N.D. Ga. 2003). Thus, if an employment relationship does not exist between two parties, all claims under Title VII must be dismissed.

LogistiCare argues that there never was an employment relationship between it and Bostic. (Doc. no. 59-1 at 4-9.)

### 1. The EEOC's failure to serve LogistiCare does not warrant dismissal.

Initially, LogistiCare argues that it never received notice of Bostic's EEOC charge of retaliation against it and that Bostic therefore failed to exhaust her administrative remedies. (Id. at 2-4.) LogistiCare is correct that the record contains no evidence that anyone ever served it with notice of the charge. But LogistiCare's argument is insufficient for two reasons. In the first place, it is not the complaining individual's job to serve notice of the charge; it is the EEOC's. See 42 U.S.C. § 2000e-5(b). LogistiCare offers no arguments as to why the EEOC's failure should prejudice Bostic's claim.

Second, LogistiCare has failed to demonstrate that it suffered any ill effects from the EEOC's failure to serve it. "'[W]hen an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action.'" E.E.O.C. v. Bd. of Pub. Educ. for City of Savannah & Chatham Cnty., 643 F. Supp. 134, 136 (S.D. Ga. 1986)(discussing the EEOC's failure to follow service requirements)(quoting E.E.O.C. v. Airguide Corp., 539 F.2d 1038, 1042 (5th Cir. 1976)). LogistiCare does not identify any

14

significant injury it suffered as a result of not being served. Therefore, nothing prevents "further judicial action." See id.

## 2. LogistiCare is not an employer under Title VII.

The Court now turns to the question of whether LogistiCare is Bostic's employer. That Bostic is not an employee under Title VII is undisputed; she does not even attempt to argue that she is. The statute defines an employee as "an individual employed by an employer," 42 U.S.C. § 2000e(f), which the Eleventh Circuit has interpreted to mean only those individuals who receive compensation from an employer, see Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1243 (11th Cir. 1998) ("[O]nly individuals who receive compensation from an employer can be deemed 'employees' under the statute."). Bostic does not argue that LogistiCare paid her, and the record is devoid of any evidence that it did so. Therefore, the Court finds that LogistiCare is not an employer under Title VII.

## 3. LogistiCare is not a joint employer of Bostic.

More complicated, however, is the question of whether LogistiCare was a joint employer of Bostic with We Care. The determination of whether an entity qualifies as a joint employer "concentrate[s] on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." Id. at 1244-45. This control must be actual control, meaning that while the two entities "are in fact separate . . . they *share* or

co-determine those matters governing the essential terms and conditions of employment." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993, n.4 (6th Cir. 1997)(emphasis in original). Other factors include the entity's authority and power to control the employee. See Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1361 (11th Cir. 1994).

Bostic presents two pieces of evidence to support her claim that LogistiCare was a joint employer with We Care. First, she argues that a LogistiCare manager, Allen Davis, told Harris to fire her. (Doc. no. 65 at 4-5.) But Bostic's testimony alone is insufficient to establish that LogistiCare actually possessed the authority or power to make a decision about her employment. Bostic misstates the facts in her brief, claiming that "Logisticare's [sic] manager directed We Care to fire Plaintiff." (Doc. no. 65 at 8.) In her deposition, however, Bostic admitted she had no personal knowledge of any conversation between Davis and Harris. (Doc. no. 57-4 at 66.) She testified only that Harris told her that Davis had told him to fire her. (Id. at 60.) Again, this is not sufficient to establish a genuine factual dispute as to the *relevant* issue of control. Even if Bostic's testimony is true, Davis could have overstepped his authority or been offering a suggestion. Harris could have been lying or mistaken about what Davis said. In short, Bostic's argument falls

far short of establishing that LogistiCare exercised any kind of control over her termination.

Second, Bostic describes various information LogistiCare requested from her: her name, her date of birth, a background check, and so forth. (Doc. no. 65 at 3-4.) But these requests are not sufficient to establish a joint employment relationship. All independent contractors with LogistiCare were required to follow these state regulations. (Doc. no. 59-2, ¶¶ 10-11.) LogistiCare was required to verify that the providers with which it contracted to transport patients complied with Georgia law. (Id. ¶¶ 7-11.) As Bostic acknowledges, the requirements were "mandated solely" by the State of Georgia, not LogistiCare. (Id. ¶ 57.) In addition, LogistiCare's request for this information does not demonstrate that it exercised any degree of control over We Care's employees. This collection of basic information has nothing to do with establishing "the degree of control an entity has *over the adverse employment decision* on which [Bostic's] Title VII suit is based." Llampallas, 163 F.3d at 1244-45 (emphasis added).

Other undisputed facts also cast significant doubt on Bostic's claim of joint employment. She admits that LogistiCare never hired her (doc. no. 59-2, ¶ 48), that it never paid her (id. ¶ 49), that no LogistiCare employee ever told she was an employee (id. ¶ 53), and that she never entered any agreement with the

company (id. ¶ 55). She even testified in her deposition that she was "not contending that" LogistiCare was her employer. (Doc. no. 57-4 at 60; see also Doc. no. 59-2, ¶ 60.)

Weighing the undisputed facts in the light most favorable to Bostic, the Court cannot conclude that LogistiCare exercised sufficient control over Bostic to qualify as her joint employer. The evidence Bostic provides is a mere "scintilla," insufficient to survive summary judgment. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). Rather, the undisputed evidence compels the conclusion that We Care alone was Bostic's employer, not LogistiCare. Because Bostic's claim against LogistiCare is predicated on the existence of an employer-employee relationship, and because no reasonable jury could find LogistiCare was her joint employer, see id., her claims against it cannot survive as a matter of law. After all, without an employment relationship, LogistiCare cannot have violated Title VII. See 42 U.S.C. § 2000e-2.

Therefore, the Court grants LogistiCare's Motion for Summary Judgment. (Doc. no. 59.)

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** We Care's Motion for Summary Judgment (Doc. no. 57) and the Court also **GRANTS** LogistiCare's Motion for Summary Judgment (Doc. no. 59).

The clerk is **DIRECTED** to **TERMINATE** each of these parties from the case, as well as all deadlines and motions pertaining to them.

Two defendants remain: Lauragina and Joseph L. Porter, Sr. They have filed no answer with the Court, but Bostic has never sought an entry of default against them. Therefore, the Court **ORDERS** Bostic to show cause within **THIRTY DAYS** why the case against them should not be dismissed for want of prosecution.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of June, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA